

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101415 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the St. Louis County |
| vs. | ) | Circuit Court |
| | ) | |
| LARRY WHITE, | ) | Honorable Tommy W. Depriest, Jr. |
| | ) | |
| Appellant. | ) | Filed:  May 19, 2015 |

### Introduction

Larry White (Defendant) appeals the trial court's judgment, entered after a jury trial, finding him guilty of two counts of first-degree statutory rape, six counts of first-degree statutory sodomy, and one count of incest.  On appeal, Defendant claims the trial court erred by admitting the victim's hearsay statements, allowing the police detective to testify about whether Defendant committed a crime, and overruling Defendant's motion for judgment of acquittal.  We affirm.

### Factual Background

Defendant was J.R.'s stepfather.  The two had a close relationship, and J.R. viewed Defendant as her father.  During the time that Defendant and J.R.'s mother ("Mother") were married, J.R. and Mother lived with Defendant and his other children.  Following the couple's separation, J.R. still visited Defendant and her stepsisters often.  On August 28, 2010, J.R., then

age 10, went to spend the night at Defendant's house. The next day, back at Mother's house, Mother found J.R. crying in the bathroom. Mother asked J.R. what was wrong, and J.R. said nothing. Mother asked J.R. if anyone had touched her, and J.R. first said no, but then told Mother that Defendant had touched her, and specifically that Defendant had "licked [her] vagina." Nine days later, Mother reported the abuse to police.

St. Louis County Police Department Detective Angela Candler Bruno interviewed J.R. When Detective Bruno asked J.R. if anyone had touched her, J.R. started crying. J.R. told Detective Bruno that on August 28, Defendant woke her up, removed her pants, pulled down her underwear, and started licking her vagina, "inserted his private part into her behind," and inserted his penis into her vagina. J.R. said that the abuse had happened more than once and it had started several years prior. After the interview, Detective Bruno referred the case to the Child Advocacy Center (CAC).

At the CAC, Beverly Tucker interviewed J.R and the interview was videotaped. J.R. told Tucker that she was raped by her stepfather. J.R. told Tucker about the same acts of abuse that she told Detective Bruno – that Defendant had licked her vagina and inserted his penis into her behind and vagina. She also disclosed to Tucker that Defendant had inserted his penis into her mouth and made her touch his penis with her hand. Again, J.R. stated that these incidents had happened more than once and that they had occurred both in the bedroom and on the couch.

Dr. Steven Laffey, an emergency room physician at Cardinal Glennon Children's Hospital, performed a medical examination of J.R. Dr. Laffey reported that the medical examination showed no signs of physical trauma. However, Dr. Laffey also testified that a normal examination may still be consistent with sexual abuse.

The State charged Defendant with two counts of first-degree statutory rape[1], six counts of first-degree statutory sodomy[2], and one count of incest[3]. The case went to trial in March 2014. The State presented the testimony of J.R., Detective Bruno, Dr. Laffey, Beverly Tucker from the CAC, and Tucker's videotaped interview with J.R. Defendant presented the testimony of his two daughters. The jury found Defendant guilty on all counts and he was sentenced to 25 years' imprisonment on each of the statutory rape and sodomy charges and four years' imprisonment on the incest charge, with all sentences to run concurrently. Defendant appeals.

## Discussion

### Point I: J.R.'s Hearsay Statements

In his first point, Defendant argues that the trial court erred in allowing Detective Bruno and Beverly Tucker to testify about J.R.'s out-of-court statements because it improperly bolstered J.R.'s testimony at trial. In response, the State asserts that neither witness's testimony improperly bolstered J.R.'s testimony, but rather had independent probative value.

*Standard of Review*

Defendant contends that this issue is subject de novo review because it involves statutory interpretation. At trial, defense counsel objected to any hearsay evidence admitted under § 491.075 RSMo (Supp. 2012). Defense counsel argued that the statute was "an unconstitutional abrogation of the hearsay rule," and requested that his objection "run as to all witnesses." The trial court overruled the objection. In Defendant's motion for new trial, Defendant simply argued that, "the [c]ourt erred in permitting evidence of prior out of court statements of [J.R.] to

---

[1] A person commits first-degree statutory rape if the victim is under fourteen years old. Section 566.032.1 RSMo (Supp. 2012).
[2] A person commits first-degree statutory sodomy if the victim is under fourteen years old. Section 566.062.1 RSMo (Supp. 2012).
[3] A person commits incest if he engages in sexual intercourse "with a person he or she knows to be, without regard to legitimacy, his or her… stepchild, while the marriage creating that relationship exists." Section 568.020.1(2) RSMo (Supp. 2012).

3

be introduced into evidence." On appeal, however, Defendant argues a different theory – the hearsay statements admitted pursuant to § 491.075 were "wholly duplicative" and improperly bolstered other evidence presented at trial. In order for an objection to be preserved for review, "the objection must be specific, and the point raised on appeal must be based upon the same theory." *State v. Knese*, 985 S.W.2d 759, 766 (Mo. banc 1999) (internal citations omitted). Because Defendant's argument on appeal is not based upon the same theory as his objection at trial, Defendant's Point I is not properly preserved and is therefore subject only to plain error review.

Rule 30.20 authorizes us to review, in our discretion, plain errors affecting substantial rights if failing to grant relief would result in the miscarriage of justice or manifest injustice. *State v. Whitaker*, 405 S.W.3d 554, 558-59 (Mo. App. E.D. 2013). Defendant has not requested plain error review on this point, and therefore, it is within our discretion to decline to exercise plain error review. *Id.* We choose to determine whether plain error review is appropriate in this case. *Id.*

First, we must determine whether the claim establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *State v. Brown*, 902 S.W.3d 278, 284 (Mo. banc 1995). Errors are plain if they are evident, obvious and clear. *State v. Reeder*, 182 S.W.3d 569, 574 (Mo. App. E.D. 2005). We will only grant relief under the plain error standard if we find that the error substantially affected the defendant's rights such that a manifest injustice or a miscarriage of justice would result if the error is left uncorrected. *Id.* Plain error can only serve as the basis for granting a new trial if the error was outcome determinative. *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002).

4

*Analysis*

Defendant maintains that his rights to a fair trial and due process of law were violated when the trial court allowed Detective Bruno and Beverly Tucker to testify about J.R.'s out-of-court statements about her abuse. Defendant argues that Detective Bruno and Tucker's testimonies were "totally duplicative" of J.R.'s testimony at trial and J.R.'s videotaped interview at the CAC.

Under § 491.075.1(2)(a), an out-of-court statement made by a child under the age of fourteen relating to an offense under Chapter 566 that would otherwise be inadmissible as hearsay "is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if … [t]he child … testifies at the proceedings." Defendant argues that evidence should not be admitted under § 491.075 if it is duplicative of the child's testimony at the proceeding. At the core of Defendant's argument is that the Missouri legislature amended § 492.304[4] after the Missouri Supreme Court ruled that the admission of a recording of a child victim's interview at the CAC was reversible error because the victim had testified to the same information at trial. *See State v. Seever*, 733 S.W.2d 438 (Mo. banc 1987). Post-*Seever*, the Missouri legislature amended § 492.304 to include subsection 3, which states that a recording of a child's statements is admissible even if it duplicates the child's testimony at trial. Defendant argues that if the legislature wanted § 491.075 to allow for hearsay statements duplicative of the child's testimony at trial to be admissible, it would have amended the statute accordingly. However, because the statute was not amended, duplicative testimony is not admissible under § 491.075. The State contends that Detective Bruno and Tucker's testimonies did not improperly bolster J.R.'s testimony at trial because the testimony

---

[4] Section 492.304.1 RSMo (Supp. 2012) concerns the admissibility of visual and aural recordings of children under fourteen years old.

5

was not offered to "wholly duplicate" J.R.'s testimony. In support of its argument, the State cites *State v. Silvey*, 894 S.W.2d 662 (Mo. banc 1995). In *Silvey*, the defendant, relying on *Seever*, argued that the trial court erred in admitting the victim's out-of-court statements to various witnesses because the statements improperly bolstered the victim's trial testimony. *Id.* at 672. However, the court found that *Seever* was inapplicable because the statements were not duplicative and that "the statements, even taken together, did not repeat [the victim's] testimony to the extent that it had the effect of allowing [the victim] to testify twice." *Id.*

In this case, Detective Bruno's testimony, including her recollection of what J.R. told her in her interview, was not admitted simply to rehash J.R.'s prior testimony at trial. Detective Bruno established the procedures and purpose of the police department's investigatory interview, as well as J.R.'s behavior and emotional reactions during her interview. Beverly Tucker's testimony also included her recollection of her interview with J.R., and established the process and procedures by which children are interviewed at the CAC. Most importantly, the witnesses' testimony served to highlight the various consistencies and changes in J.R.'s statements through time. As a result, each witness's testimony had a value apart from duplicating J.R.'s trial testimony. *See State v. Biggs*, 333 S.W.3d 472, 478-79 (Mo. banc 2011) ("A witness's testimony as to his or her own recollection of the child's statements as well as the circumstances surrounding the making of that statement necessarily will be different than that of an alternative witness"); *see also State v. Redman*, 916 S.W.2d 787, 792 (Mo. banc 1996) ("Each witness testified to his or her own recollection of [the victim's] statement and the circumstances surrounding the interview. The testimony supported the consistency of [the victim's] statement and, therefore, had probative value apart from [the victim's] out-of-court statement").

6

Defendant fails to show substantial grounds for believing that manifest injustice resulted from the admission of Detective Bruno's and Beverly Tucker's testimony. Accordingly, Point I is denied.

### Point II: Detective Bruno's Testimony

In his second point, Defendant argues that the trial court plainly erred by failing to exclude or strike *sua sponte* Detective Bruno's testimony that after her interview with J.R., she determined that a crime had been committed. Defendant contends that Detective Bruno's testimony was improper because she was testifying as to an ultimate issue for the jury's determination. The State asserts that Detective Bruno was simply testifying as to the investigatory process and procedures for interviewing child victims.

Defendant concedes that he did not object to this testimony at trial or in his motion for new trial. Point II is not properly preserved for review, and is therefore subject to plain error review.

Missouri law forbids lay witnesses from testifying about ultimate issues for the jury's determination. *See State v. Cason*, 596 S.W.2d 436 (Mo. 1980); *State v. Linzia*, 412 S.W.2d 116 (Mo. 1967). Defendant points to five separate instances in Detective Bruno's testimony in which he claims Detective Bruno testified that a crime had been committed. These instances are as follows:

[The State]: What was the purpose of your initial meeting … with [J.R.]?

[Detective Bruno]: The purpose – we call it cursory interview, and the purpose of a cursory interview is to just gather some basic information, seeing what the victim tells us about a certain situation to see if it meets the elements of a crime.

…

[The State]: Did you ask her specifically about the night of August 28, morning of August 29?

7

[Detective Bruno]:  I believe I asked her what happened, and then she started saying – telling me what happened.

…

[Defense counsel]:  Well you had – so you knew – you're telling us you knew this child was going to wind up at the Child Advocacy Center before you even walked in the room?

[Detective Bruno]:  No.  I don't know that there was even a crime or do I know that there's a crime that's been committed until they fully disclose it, so going into the interview, I didn't even know that she was going to disclose something to me.

…

[Defense counsel]:  Now cursory, can you define the term cursory?

[Detective Bruno]:  It's just a basic interview as to what happened so we can establish if there was a crime that had occurred.

…

[The State]:  And, in fact, if this had been a detailed interview rather than a cursory interview, would you have gone into more details and asked more questions of the child?

[Detective Bruno]:  I would not have because I'm not a forensic interviewer.  Like I said before, it's just our responsibility to establish that a crime has occurred and then set it for a CAC interview.

[The State]:  Did you determine that you believed a crime had occurred?

[Detective Bruno]:  Yes, ma'am.

Defendant maintains that in each of these instances, Detective Bruno was testifying about an ultimate issue for the jury, specifically that Defendant had, in fact, committed a crime. Defendant argues that it was plain error for the court to allow this testimony and that he was prejudiced by its admission.  In support of his argument, Defendant relies on *State v. Clements*, 789 S.W.2d 101 (Mo. App. S.D. 1990).  In *Clements*, the defendant was charged with first-degree murder and a psychiatrist examined the defendant prior to trial.  *Id.* at 107.  The psychiatrist's deposition was read into evidence at trial, including the psychiatrist's statement

8

that the defendant had deliberated before committing the murder. *Id.* On appeal, the Southern District determined that the admission of the psychiatrist's statement constituted plain error and warranted reversal. *Id.* at 111.

Here, Defendant emphasizes that Detective Bruno was not an expert witness and that it was improper for the State to ask Detective Bruno to testify as to whether she "evaluate[d] the evidence and determine[d] that a crime had occurred." The record shows that at trial, Detective Bruno testified as to the investigatory process and the procedure by which she interviewed J.R. She explained the circumstances of her interview with J.R. – that it was a "cursory interview," and that the purpose of the interview is to determine whether the alleged acts even constitute a crime under Missouri law. Detective Bruno recalled that she asked J.R. about what allegedly happened. On cross-examination, defense counsel repeatedly asked the detective about why she did not record her interview with J.R. Detective Bruno responded that she does not tape victims' cursory interviews because she "already knew that the CAC would tape the interview." Defense counsel then insinuated that Detective Bruno had come to a conclusion that J.R. would be sent to the CAC before she even interviewed J.R., to which Detective Bruno responded, "No. I don't know that there was even a crime or do I know that there's a crime that's been committed until they fully disclose it, so going into the interview, I didn't even know that she was going to disclose something to me." On redirect, the State again asked Detective Bruno about the protocol for cursory interviews and Detective Bruno again explained that the purpose of the cursory interview is to determine if the reported incident constituted a crime, and if so, they forward the case to the CAC for further investigation.

Unlike in *Clements*, *supra*, where the psychiatrist testified to a specific element of the crime, Detective Bruno did not testify as to issues that were for the fact-finder's determination.

9

She did not testify that Defendant was guilty or that J.R's allegations were truthful. Detective Bruno simply testified to the investigatory process – that she brought in J.R. for a cursory interview, and that after speaking to J.R., she determined that the alleged acts would constitute a crime, and therefore referred the case to the CAC.

Defendant fails to demonstrate substantial grounds for believing that Detective Bruno's statements resulted in manifest injustice or a miscarriage of justice. Point II is denied.

### Point III: Sufficiency of the Evidence and Jury Instructions

In his third point, Defendant makes two arguments. First, Defendant argues that the trial court erred in overruling his motion for judgment of acquittal on Counts 1, 2, 3, 4, and 9[5] because there was insufficient evidence to find him guilty beyond a reasonable doubt. Second, Defendant argues that the trial court erred in submitting Jury Instructions 7, 8, 9, 10 and 15 to the jury, accepting guilty verdicts on those counts, and sentencing Defendant on those counts because the jury instructions were insufficient to result in a unanimous verdict. The State contends that there was sufficient evidence to convict Defendant on those counts and that the jury instructions were sufficiently specific to result in a unanimous jury verdict.

### *Standard of Review*

On a claim challenging the sufficiency of the evidence, our review is limited to a determination of whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002). The evidence and all reasonable inferences are viewed in a light most favorable to the verdict, and we disregard any evidence and inferences to the contrary. *Id.* at 407.

---

[5] Counts 1, 2, 3, 4, and 9 relate to the sexual abuse that occurred prior to August 28, 2010.

10

Defendant's claim regarding the jury instructions is not preserved for review. While defense counsel objected to the jury instructions at trial, the claims were not included in Defendant's motion for new trial. In order to preserve claims of instructional error, defense counsel must make an objection at trial and also raise the claim in the motion for new trial. *State v. Mangum*, 390 S.W.3d 853, 860 (Mo. App. E.D. 2013). Because Defendant did not raise the claim of instructional error in his motion for new trial, we are therefore limited to plain error review.

*Analysis*

Defendant argues that the evidence at trial regarding the sexual abuse prior to August 28, 2010 was not specific enough to support a finding that he was guilty beyond a reasonable doubt. He also contends that Jury Instructions 7, 8, 9, 10 and 15 were not specific enough to result in a unanimous jury verdict.

*A. Sufficiency of the Evidence for Counts 1, 2, 3, 4, and 9*

As to the sufficiency of the evidence to support Counts 1, 2, 3, 4, and 9, Defendant argues that the evidence "was vague, contradictory, given only in response to highly leading questions, and gave no detail as to specific events that may or may not have occurred." Defendant recounts J.R.'s testimony at trial, as well as her statements to Beverly Tucker at the CAC. Defendant contends that because J.R. did not describe a single, specific instance of sexual abuse prior to August 28, there was insufficient evidence to support a guilty verdict. The State counters that Defendant is arguing for the application of the now abolished "corroboration rule," and that the testimony at trial was sufficient for a conviction on those counts.

In *State v. Porter*, the defendant was convicted of two counts of first-degree statutory sodomy. 439 S.W.3d 208 (Mo. banc 2014). On appeal, the defendant argued that the trial court

11

erred in overruling his motion for judgment of acquittal because the victim's testimony was "so contradictory and inconsistent that it [could not] constitute substantive, probative evidence." *Id.* at 213. The Missouri Supreme Court examined Missouri's "corroboration rule" and the "destructive contradictions doctrine" and abolished both. *Id.* at 212-13. The corroboration rule allowed appellate courts to disregard a sex crime victim's testimony if it was contradictory and uncorroborated. *Id.* at 211. The Court found that the corroboration rule should be abolished for two reasons. First, it required appellate courts to make credibility determinations that are for the trier of fact. *Id.* at 212. Second, the corroboration rule only applied to victims of sex crimes, therefore assuming that a sex crime victim's testimony is less credible than another crime victim's testimony and that "judges and juries are uniquely unable to make accurate factual determinations in sex crime cases." *Id.* Similarly, the destructive contradictions doctrine allowed an appellate court to disregard a witness's testimony if the court determined the testimony was "inherently incredible, self-destructive or opposed to known physical facts with respect to an element on the crime." *Id.* at 213. The Court again found the doctrine required appellate courts to make credibility determinations that are reserved for the finder of fact and therefore abolished the doctrine entirely. *Id.*

Defendant's argument regarding the sufficiency of the evidence is similar to that of the defendant in *Porter*. Defendant urges us to find that there was insufficient evidence to support his convictions for Counts 1, 2, 3, 4 and 9 because J.R.'s testimony was vague, contradictory and did not provide specific dates or details. Defendant points to various instances in the record where J.R.'s statements were contradictory or unclear. However, the inconsistencies in J.R.'s statements do not render the evidence insufficient. At trial, J.R. testified that August 28 was not the first time that Defendant had put his mouth on her vagina, put his penis in her anus, or put his

12

penis in her vagina. At the CAC, J.R. told Beverly Tucker that Defendant did the previously mentioned sexual acts prior to August 28, and that he also put his penis in her mouth. Any inconsistencies were for the jury's determination as the fact-finder. *See Porter*, 439 S.W.3d at 214. When we review the evidence in the light most favorable to the verdict, there was sufficient evidence for a reasonable juror to conclude that Defendant, prior to August 28, had sexual intercourse with J.R., put his mouth on J.R.'s vagina, put his penis in her anus, and put his penis in her mouth.

### B. Jury Instructions 7, 8, 9, 10, and 15

In addition to his challenge to the sufficiency of the evidence on Counts 1, 2, 3, 4 and 9, Defendant also claims that the jury instructions on those counts were insufficient and allowed the jury to find him guilty without a unanimous verdict. The State maintains that the jury instructions were sufficient because they defined the specified time period and location of the acts. Jury Instruction No. 7 (first-degree statutory rape) read:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
> First, that between September 1, 2007 and August 27, 2010, … in the County of St. Louis, State of Missouri, the defendant knowingly had sexual intercourse with J.R. in the bedroom; and
> Second, that at the time J.R. was a child less than 12 years old, then you will find the defendant guilty under Count I of statutory rape in the first degree.
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of the offense.

Jury Instruction No. 8 (first-degree statutory sodomy) read:

> As to Count II, if you find and believe from the evidence beyond a reasonable doubt:
> First, that between September 1, 2007 and August 27, 2010, … in the County of St. Louis, State of Missouri, the defendant knowingly placed his tongue on the vagina of J.R. in the bedroom; and
> Second, that such conduct constituted deviate sexual intercourse; and
> Third, that at the time J.R. was a child less than 12 years old, then you will find the defendant guilty under Count II of statutory sodomy in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of the offense.

As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the tongue of another person, done for the purpose of arousing or gratifying sexual desire of any person.

Jury Instruction No. 9 (first-degree statutory sodomy) was identical to Jury Instruction No. 8, but specified instead that Defendant "placed his penis against the anus of J.R." and defined deviate sexual intercourse as "any act involving the genitals of one person and the anus of another person, done for the purpose of arousing or gratifying sexual desire of any person." Jury Instruction No. 10 (first-degree statutory sodomy) was also the same as Jury Instruction No. 8, but specified that Defendant "put his penis into the mouth of J.R." and defined deviate sexual intercourse as "any act involving the genitals of one person and the mouth of another person, done for the purpose of arousing or gratifying sexual desire of any person." Finally, Jury Instruction No. 15 (incest) read:

As to Count IX, if you find and believe from the evidence beyond a reasonable doubt:
First, that between September 1, 2007 and August 27, 2010, … in the County of St. Louis, State of Missouri, the defendant engaged in deviate sexual intercourse with J.R. by placing his penis into the mouth of J.R. in the bedroom; and
Second, that J.R. was a stepchild of defendant by virtue of a marriage creating that relationship and which still existed at the time referred to in paragraph First, and;
Third, that defendant knew or was aware J.R. was a stepchild of defendant by virtue of a marriage creating that relationship and which still existed at the time referred to in paragraph First, then you will find the defendant guilty under Count IX of incest.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of the offense.
As used in this instruction, the term "deviate sexual intercourse" means any act involving the genitals of one person and the mouth of another person, done for the purpose of arousing or gratifying sexual desire of any person.

The Missouri Constitution provides that "the right of trial by jury as heretofore enjoyed shall remain inviolate…" Mo. Const. art. I, sec. 22(a). The Missouri Supreme Court has interpreted "as heretofore enjoyed" to protect "all the substantial incidents and consequences that

14

pertain to the right to jury trial at common law." *State v. Hadley*, 815 S.W.2d 422, 425 (Mo. banc 1991). A unanimous jury verdict is a "substantial incident" of the right to jury trial. *Id.* In cases where multiple alleged acts in a given time period are charged in a single count, the court can protect a defendant's right to a unanimous jury verdict by either (1) choosing one particular act to support the charge, or (2) specifically instructing the jury that they must unanimously agree that at least one of the multiple acts occurred. *State v. Celis-Garcia*, 344 S.W.3d 150, 157 (Mo. banc 2011).

Here, Defendant asserts that the jury instructions were not specific enough to allow the jury to come to a unanimous verdict. Defendant also argues that the evidence presented at trial was insufficient for the jurors to unanimously agree to a specific act on each of these counts. Defendant contends that the jury instructions are similar to those in *Celis-Garcia*. In that case, the two victims alleged multiple acts of sexual abuse in various locations. *Celis-Garcia*, 334 S.W.3d at 156. The jury instructions simply required the jury to find the defendant guilty if they found "that between [specified dates]… the defendant or [her boyfriend] placed her or his hand on [the victim's] genitals[.]" *Id.* The Court found these instructions were insufficient because the instructions did not require the jurors to agree on one particular act in one particular location. *Id.*; *see also State v. LeSieur*, 361 S.W.3d 458, 463 (Mo. App. W.D. 2012) (where multiple acts of the same type of sexual abuse occur within one time period, the jury instruction must "distinguish … between the two instances of [sexual abuse] which fell within each count").

Contrary to Defendant's contention, the jury instructions in this case are less like those *Celis-Garcia* and more like those in *State v. Flores*, 437 S.W.3d 779 (Mo. App. W.D. 2014). In *Flores*, the Western District found that the jury instructions required a unanimous verdict because "[t]he various instructions described specific parts of the body that were touched and

15

specified the location where the touching occurred." *Id.* at 791. In the instant case, J.R. told Beverly Tucker at the CAC that Defendant had placed his mouth on her vagina, inserted his penis in her anus, inserted his penis in her vagina, and put his penis in J.R.'s mouth on multiple occasions prior to August 28, 2010. J.R. said that Defendant did these acts both in the bedroom and on the couch. The challenged instructions provided a specific time period for the alleged acts ("between September 1, 2007 and August 27, 2010"), described the specific body part that was touched, and specified the location of the acts ("in the bedroom").[6] As a result, the jury instructions were sufficient to secure a unanimous jury verdict. We find no error, plain or otherwise.

Because there was sufficient evidence to find Defendant guilty beyond a reasonable doubt on Counts 1, 2, 3, 4, and 9, and because the trial court did not plainly err in submitting Instructions 7, 8, 9, 10 and 15 to the jury, Point III is denied.

### Point IV: Sufficiency of the Evidence on Count 9 (Incest)

In Point IV, Defendant offers an additional argument that there was insufficient evidence to convict him of incest (Count 9). Defendant argues that there was no credible or reliable evidence introduced at trial to prove that Defendant and Mother were married, creating the stepchild relationship, at the time of the alleged acts. The State argues that this claim is without merit because the evidence adduced at trial is sufficient to support a finding that Defendant and Mother were married.

---

[6] In July 2013, MAI-CR 3d 304.02 was amended to add Notes on Use 7, which addresses verdict unanimity in multiple acts cases, including how the State can structure verdict directors in order to protect the defendant's right to a unanimous verdict in accordance with *Celis-Garcia*. Here, the jury instructions complied with *Celis-Garcia* and MAI-CR 304.02 by electing one particular criminal act, which was done by specifying the time period, location, and body part that was touched.

16

As stated above, our review of a claim challenging the sufficiency of the evidence is limited to a determination of whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Crawford*, 68 S.W.3d at 408. The evidence and all reasonable inferences are viewed in a light most favorable to the verdict, and we disregard any evidence and inferences to the contrary. *Id.* at 407.

In this case, viewing the evidence in the light most favorable to the verdict, J.R. was born in April 2000. Mother and Defendant were married when J.R. was two years old. No evidence was presented regarding whether or when Mother and Defendant divorced. There was sufficient evidence for a reasonable juror to conclude that Defendant engaged in sexual intercourse with J.R. while Defendant and Mother were married. Point IV is denied.

### Conclusion

For the foregoing reasons, the trial court's judgment is affirmed.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.

17