

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102582 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | Honorable Jon A. Cunningham |
| RAYMOND W. SCHNEIDER, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 15, 2016 |

## Introduction

Appellant Raymond Schneider ("Schneider") appeals from the judgment of the trial court, following a jury trial, convicting him on seven counts of possession of child pornography under Section 573.037.[1] Schneider raises two points on appeal. First, Schneider claims the trial court erred in denying Schneider's motion to suppress his confession because police extracted the confession in a custodial interrogation without advising Schneider of his Miranda[2] rights. Second, Schneider claims the trial court abused its discretion in admitting evidence that police officers found thousands of uncharged files containing child pornography in Schneider's various computers and hard drives.

Because Schneider was not in the custody of police officers when he made his confession, advising Schneider of his Miranda rights was not required and the trial court did not

---

[1] All statutory references are to RSMo (Cum. Supp. 2013).

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

err in denying Schneider's motion to suppress. Because evidence of additional child-pornography files found on Schneider's computers and hard drives was relevant to prove an absence of mistake, the trial court committed no error in admitting this evidence. Accordingly, we affirm the judgment of the trial court.

Factual and Procedural History

I.     Underlying Questioning and Confession

Schneider received a call on his cell phone from Detective Michael Coyne ("Det. Coyne") while he was out shopping. Det. Coyne informed Schneider that police were executing a search warrant at Schneider's home. Det. Coyne told Schneider that he could come home for more information. Det. Coyne testified he did not order Schneider to come home. Schneider finished shopping, retrieved his car, picked up his son, and returned home.

About an hour later, Schneider arrived home with his son in the car. A marked police van and several unmarked cars sat outside Schneider's home. Lieutenant Mateja ("Lt. Mateja") spoke with Schneider in the front yard. Lt. Mateja told Schneider that he was not under arrest and was free to leave, but he could go inside to speak with Det. Coyne if he wanted. Schneider left his son in the car and went inside to speak with Det. Coyne.

Schneider and Det. Coyne sat down at the kitchen table, with Schneider sitting between Det. Coyne and the front door of the home. Lt. Mateja, four other armed officers, and one civilian crime scene technician moved about the home collecting evidence. Lt. Mateja occasionally stopped in the kitchen to participate in the interview. Schneider retained his car keys and cell phone, and was not physically restrained. Det. Coyne placed an audio recorder on the kitchen table and began to interview Schneider. Det. Coyne did not advise Schneider of his Miranda rights.

2

The interview lasted approximately one hour and fifteen minutes. Det. Coyne first asked Schneider about his computers. Schneider told Det. Coyne that his computers contained torrent programs, which Schneider used to download files from the internet. Schneider stated that he used the torrent programs to download television shows and movies to watch with his son, and to download adult pornography. Det. Coyne asked if Schneider had ever seen his son watching pornography, and Schneider said he had not. Schneider explained that his son had high-functioning autism, and that his son was "extremely computer-savvy."

During the interview, Lt. Mateja came into the kitchen and informed Schneider that officers found child pornography on hard drives in Schneider's bedroom. Lt. Mateja stated, "I mean there's a lot [of child pornography], and I can't see how your son could do that without you knowing about it at all … But the problem is everything's pointing to you at this point." Lt. Mateja told Schneider that police wanted to get these child-pornography files out of circulation. Schneider stated, "I understand that completely. And you're right. It—I'm the one that's downloaded. I'm the one that has seen it. I been getting rid of it." Schneider later said the cable company was stopping his internet access because he had been downloading child pornography, which Schneider called a "Godsend" because he would lose access to child pornography and could move forward with his life.

Later in the interview, Lt. Mateja asked Schneider whether he wanted to make a written statement. Schneider responded, "I understand what you're saying. But I think you also understand that I feel like I'm in a rock—between a rock and a hard place … And so I don't know what to do. Without some kind of, you know, counsel. I don't know what to do." The questioning continued for another twenty minutes about other topics not related to the written statement. When Det. Coyne asked about Schneider making a written statement again,

3

Schneider stated, "I had [*sic*] need to have counsel." At this point, Det. Coyne placed Schneider under arrest, informed Schneider that his son's mother had picked up his son, and read Schneider his Miranda rights.

## II. Pretrial Procedure

The State charged Schneider with seven counts of possession of child pornography. Counts 1–3 alleged possession of still images of child pornography, and Counts 4–7 alleged possession of moving images of child pornography.

Defense counsel filed a pretrial motion to suppress the statements Schneider made during his interview with Det. Coyne and Lt. Mateja because the statements were made before Schneider was advised of his Miranda rights. At the hearing conducted on the motion to suppress, the trial court heard evidence from Lt. Mateja, Det. Coyne, and Schneider. The trial court issued a written order denying Schneider's motion to suppress. The trial court concluded that considering the totality of the circumstances, Schneider was not restrained or under formal arrest at the time of the questioning. Thus, the trial court found Miranda warnings were not necessary before police questioned Schneider.

In a separate pretrial hearing, the State informed the trial court, "in addition to the charged items of child pornography that were found on the defendant's hard drives and on this USB bracelet, that both those sources ... contained additional [child] pornography." The State indicated it was not going to show the uncharged child pornography to the jury, but that a detective was planning to testify to the number of uncharged images and videos containing child pornography that police found in Schneider's home. The State argued this behavior was relevant to show that Schneider did not download the charged images and videos accidentally. The State also maintained that evidence relating to the uncharged images and videos was relevant to provide the jury a clearer picture of Schneider's behavior and his motive, which was "sexual

4

gratification by watching these images of children being sexually abused." Defense counsel argued that evidence of the uncharged images and videos was inadmissible as uncharged bad acts. The trial court overruled Schneider's objections and stated that it would allow evidence of the number of uncharged pieces of child pornography found in Schneider's computers.

Defense counsel filed a written motion in limine to, *inter alia*, exclude all evidence of uncharged child pornography from being introduced at trial. On the morning of trial, the trial court again heard argument on the uncharged child pornography. The trial court ruled the State could reference the number of uncharged images and videos containing child pornography, but could not show those images and videos to the jury. The trial court denied defense counsel's motion in limine with respect to this argument.

## III.   Trial and Sentencing

At trial, the State referred to the uncharged images and videos containing child pornography during its opening statement. The State told the jury that investigators found a "massive collection of hard core child pornography" and "massive amounts of child pornography" on Schneider's computers and hard drives. The State specified the number of images and videos found on each computer and hard drive, which numbered in the thousands of individual files.[3]

The State later attempted to admit the evidence of the uncharged images and videos containing child pornography through the testimony of a forensic computer expert at trial. Before the State could elicit such testimony, defense counsel asked to approach the bench. At sidebar, the following exchange occurred:

---

[3] While the specific numbers are not relevant for our discussion, police found thousands of still images and hundreds of videos containing child pornography scattered over two computers, a USB flash drive, and three external hard drives.

5

[Defense counsel]: I just wanted to clarify at the bench. It's my understanding that the Court's prior ruling the prosecutor could talk about the number of items that were found but that no items other than the ones that were charged could be displayed to the jury or described in detail to the jury?

[The State]: Your Honor, I'm not going to show any of the pornography of the charged pornography. However, I'm going to mention the amount of videos, the amount of still images, just like I did in my opening, and I will ask him to read the file names of certain files that were found on the computer.

[Defense counsel]: Your Honor, I would object to the file names being read for any file. It's not a charged offense.

[Trial court]: Thank you. I'm going to overrule the objection. I'll allow it.

[Defense counsel]: Can I have a continuing objection?

[Trial court]: Yes, it will be a continuing objection.

The witness proceeded to testify, in relevant part, about the uncharged images and videos containing child pornography. Schneider also took the stand to testify in his own defense. Schneider claimed that he never knowingly downloaded child pornography and that anyone could have accessed his computers because there was "open Bluetooth and open Wi-Fi on the system which allowed anybody to access." Schneider also stated he felt pressured to confess because the investigators asked questions about his son, which made Schneider concerned that police suspected his son of downloading illegal child pornography. During closing argument to the jury, the State emphasized the large quantity of uncharged child pornography found on Schneider's computers by stating, "14,551[4] images and videos of innocent, helpless little children being brutalized, that is what this defendant had in his home on October 17, 2013." Defense counsel stressed in her closing argument that the "ultimate issue" for the jury to determine was whether Schneider "knowingly possessed images of child pornography."

---

[4] We reiterate the State only charged Schneider with possessing seven of the child-pornography files found on his various computers and hard drives.

6

The jury found Schneider guilty on all seven counts. The trial court sentenced Schneider to a total of fourteen years' imprisonment. This appeal follows.

Points on Appeal

Schneider raises two points on appeal. Schneider first argues the trial court erred in denying Schneider's motion to suppress his confession. Specifically, Schneider asserts that he confessed while subject to an unconstitutional custodial interrogation because investigators did not advise him of his Miranda rights before beginning the interrogation. Second, Schneider argues the trial court abused its discretion in overruling Schneider's objection to uncharged evidence of child pornography seized from his computers and hard drives. Specifically, Schneider asserts that admission of evidence of uncharged child pornography constituted uncharged bad acts, which are inadmissible to prove he had the propensity to commit the crimes at issue in this case.

Discussion

## I.     Point One—Admissibility of Schneider's Confession

Schneider maintains that he confessed while under custodial interrogation before he was informed of his Miranda rights. We agree that law enforcement's questioning of Schneider at his home constituted interrogation. The only issue remaining for our consideration is whether Schneider was in custody during the time he confessed to police.

### A.     Standard of Review

Our review of a ruling on a motion to suppress is based upon the whole record, both at the motion hearing and at trial, and the totality of the circumstances. State v. Bohn, 950 S.W.2d 277, 280 (Mo. App. E.D. 1997). We review a trial court's ruling on a motion to suppress to determine if the ruling is supported by substantial evidence. Id. We view the facts and reasonable inferences in the light most favorable to the ruling. State v. Hill, 247 S.W.3d 34, 44

7

(Mo. App. E.D. 2008). We defer to the trial court's resolution of the weight of the evidence and the credibility of witnesses. Id. However, whether a suspect was in custody is an issue of law that we review *de novo*. State v. Little, 473 S.W.3d 662, 667 (Mo. App. E.D. 2015).

### B. Totality of the Circumstances Test

Statements made during a custodial interrogation are inadmissible against a suspect on the issue of that suspect's guilt of the charged offense unless police first inform the suspect of his or her rights under the Fifth Amendment. Hill, 247 S.W.3d at 44 (citing Miranda, 384 U.S. at 444). The United States Supreme Court in Miranda defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444.

We determine whether a suspect was in "custody" by analyzing the totality of the circumstances. Hill, 247 S.W.3d at 47. "Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Id. (quoting Thompson v. Keohane, 516 U.S. 99, 112 (1995)). The reasonable-person standard is an objective test; we ignore the subjective views of the interrogating officers and the person being questioned. Hill, 247 S.W.3d at 47.

The Supreme Court of Missouri has identified factors that are instructive when determining whether a suspect was "in custody." State v. Werner, 9 S.W.3d 590, 595 (Mo. banc 2000). A suspect's freedom to leave the scene, the purpose, the place, and length of an interrogation are factors to consider in determining whether a suspect is in custody. Id. Other indicia of custody include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;

8

(2) whether the suspect possessed unrestrained freedom of movement during questioning;

(3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

(4) whether strong arm tactics or deceptive stratagems were employed during questioning;

(5) whether the atmosphere of the questioning was police dominated; or,

(6) whether the suspect was placed under arrest at the termination of the questioning.

Id. (quoting United States v. Griffin, 922 F.2d 1343, 1348 (8th Cir. 1990)). However, these factors are *not* exhaustive. Hill, 247 S.W.3d at 45. "[I]t is clear that it is not necessary or even always appropriate to determine custody by weighing the presence or absence of the six Griffin/Werner factors in each case. Rather, we look at the totality of the circumstances." Id. at 47. The "ultimate inquiry" is whether the restraint on the suspect's movement rose to the degree associated with a formal arrest. Id.

C.    Custody Determination

While we recognize that the Werner/Griffin factors are not exhaustive, both the trial court and the parties' briefs have based their analysis upon these factors. Thus, we will begin with the Werner/Griffin factors.

The first enumerated Werner/Griffin factor is whether Schneider was told he was free to leave and whether he was considered under arrest. Schneider arrived at his home while officers were executing the search warrant. After exiting his vehicle, Schneider met Lt. Mateja outside of the home. Lt. Mateja informed Schneider that he was not under arrest and that he was free to leave; however, if Schneider wanted more information, he could talk to Det. Coyne inside the home. Schneider voluntarily entered the home and began discussing the situation with

9

Det. Coyne. Because Lt. Mateja told Schneider that he was free to leave and not under arrest when Schneider first arrived at the home, this factor weighs strongly against finding that Schneider was in custody.

The second enumerated Werner/Griffin factor is whether Schneider possessed unrestrained freedom of movement during questioning. The police questioning occurred in the kitchen of Schneider's home. Both Schneider and Det. Coyne sat at the kitchen table, while Lt. Mateja came into the room intermittently. Schneider was not handcuffed or physically restrained in any way. Schneider's movement was not restricted. Schneider suggests that the recording device placed by Det. Coyne on the kitchen table indicated that he was required to remain in the kitchen. We are not persuaded that the placement of a recording device, without more, indicates to a reasonable person that he or she may not leave the room. Schneider never asked to leave the kitchen table for any reason, never attempted to get up from the table, and no officer stopped Schneider from doing so. Because the police officers did not physically restrain or prohibit Schneider from moving from the kitchen table, this factor weighs against finding that Schneider was in custody.

The third enumerated Werner/Griffin factor is whether Schneider initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions. While it is undisputed Det. Coyne initiated contact by calling Schneider on his cell phone, the record is equally clear that Det. Coyne did not order Schneider to come home. Instead, Schneider voluntarily drove home to meet the officers, which Schneider did only after finishing his shopping and picking up his son. When Schneider arrived at home an hour after receiving the phone call, Lt. Mateja told Schneider he was free to leave, and that he did not have to go inside to talk to Det. Coyne. Schneider voluntarily went inside his home to discuss the police

10

investigation with Det. Coyne. While the police initiated the first contact with Schneider, the record demonstrates that Schneider voluntarily acquiesced to being interviewed by Det. Coyne. This factor weighs strongly against finding that Schneider was in custody.

The fourth enumerated Werner/Griffin factor is whether police used strong-arm tactics or deceptive strategies during their questioning of Schneider. The trial court concluded, "There was no evidence presented that there were any strong-arm tactics or deception utilized by law enforcement during the questioning of the defendant." Schneider does not suggest that police used threats or physical intimidation to force a confession. Instead, Schneider argues that Det. Coyne and Lt. Mateja suggested Schneider's son might have downloaded the child pornography. Schneider reasons this insinuation that Schneider's special-needs son committed the crimes put Schneider in an insufferable position of incriminating himself or his son. Schneider maintains that this line of questioning constituted a strong-arm tactic. We disagree. The written transcript[5] of the officers' questioning about Schneider's son indicates the officers were reasonably investigating the possible means by which child pornography might have ended up on Schneider's computers and hard drives. We consider these questions reasonable in the course of the police investigation, and do not constitute deception or strong-arm tactics. This factor weighs against finding that Schneider was in custody.

The fifth enumerated Werner/Griffin factor is whether the atmosphere surrounding the interview was police dominated. Two officers, Det. Coyne and Lt. Mateja, interviewed Schneider. Four additional armed officers moved around the home executing the search warrant. A marked police van and several unmarked cars sat outside Schneider's home. Because the

---

[5] In its order denying Schneider's motion to suppress, the trial court also found that the audio recording of the interview reflected that the officers were polite and soft-spoken, and that no deception was apparent from listening to the audio. Because our record does not include the audio recording of the interview, we do not consider these findings of fact.

11

questioning of Schneider occurred in a police-dominated atmosphere, this factor weighs in favor of finding that Schneider was in custody. However, this factor is somewhat mitigated as the interview occurred in Schneider's home rather than the police station. Even Miranda contrasted the environment of a police station, where "the investigator possesses all the advantages," to a suspect's "own home," where the suspect may be more "confident, indignant, or recalcitrant." See United States v. Williams, 760 F.3d 811, 815 (8th Cir. 2014) (quoting Miranda, 384 U.S. at 449–50).

The final enumerated Werner/Griffin factor is whether police arrested Schneider at the termination of questioning. At the end of questioning, Schneider expressly stated that he needed counsel. Det. Coyne immediately placed Schneider under arrest. This factor weighs in favor of finding that Schneider was in custody.

We note the presence of additional factors which also weigh against finding that this interview constituted a custodial interrogation. The detectives questioned Schneider for approximately one hour and fifteen minutes. Schneider never requested to stop the interview. Given these circumstances, we find that an hour and fifteen minutes of questioning, in Schneider's own home, was insufficient coercion to overcome Schneider's will and rise to the level of formal arrest. Compare Hill, 247 S.W.3d at 48 ("The interview lasted only an hour."); United States v. Wolk, 337 F.3d 997, 1007 (8th Cir. 2003) (defendant "was only questioned for an hour and twenty minutes—certainly not a marathon session designed to overcome defendant's will.") (internal quotations omitted); with Howes v. Fields, 565 U.S. __, 132 S. Ct. 1181, 1193 (2012) (questioning between five and seven hours in the evening lent support to the argument that defendant was in custody). Further, Schneider was allowed to keep his car keys and cell phone throughout the entire interview, which suggests to a reasonable person that he could leave

12

the interview in his car or use his cell phone at any time. A reasonable person would not expect to keep his or her car keys and cell phone in a situation comparable to a formal arrest.

After weighing the totality of the circumstances, we hold that Schneider was not in custody because the restraint on him did not rise to a degree associated with formal arrest. Because Schneider was not subject to custodial interrogation, the police were not required to inform Schneider of his Miranda rights before initiating questioning. Accordingly, the trial court did not err in allowing Schneider's statements into evidence at trial. Point One is denied.

## II.    Point Two—Evidence of Uncharged Bad Acts

Schneider's second point focuses on the trial court's admission of evidence relating to voluminous files containing child pornography found on Schneider's computers and hard drives for which Schneider was not charged. Schneider avers that these files constitute inadmissible evidence of uncharged bad acts offered to prove his propensity to possess child pornography. We disagree.

### A.    Preservation of Error

As a threshold matter, we address whether Schneider properly preserved this argument for appeal. Schneider filed a pretrial motion in limine to exclude evidence that police found additional, uncharged evidence of child pornography on Schneider's various computers and hard drives. The trial court denied Schneider's motion in limine. A motion in limine, standing alone, preserves nothing for appeal. State v. Purlee, 839 S.W.2d 584, 592 (Mo. banc 1992).

Instead, an accused must object with sufficient specificity at trial to appraise the trial court of the grounds for the objection. State v. Phillips, 939 S.W.2d 502, 505 (Mo. App. W.D. 1997). Failure to make a specific objection to the evidence at the time of its attempted admission waives the claim for appeal. State v. Mickle, 164 S.W.3d 33, 55 (Mo. App. W.D. 2005). "Missouri courts strictly apply these principles based on the notion that trial judges should be

13

given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered." Id. (quoting State v. McCullum, 63 S.W.3d 242, 259 (Mo. App. S.D. 2001)). Further, to preserve an objection for appeal, an appellant must rely on the same theory that supported the objection at trial. State v. White, 466 S.W.3d 682, 686 (Mo. App. E.D. 2015). On appeal, a litigant cannot broaden the objection presented to the trial court. State v. Clark, 280 S.W.3d 625, 628 (Mo. App. W.D. 2008).

Schneider's theory raised on appeal is the same argument advanced in his pretrial motion in limine: that the State's reference to thousands of uncharged files containing child pornography constitutes evidence of uncharged bad acts, which are inadmissible to show Schneider's propensity to commit the crimes charged in this case. During a sidebar at trial, defense counsel stated that she wanted to "clarify" the trial court's ruling on the pretrial motion in limine. Defense counsel failed to explicitly "object" to any reference of the number of uncharged child-pornography files or otherwise request to renew her motion in limine.[6] Defense counsel's failure to renew the motion in limine waived this issue for appeal.

Defense counsel's specific objection made during that sidebar was based on a different theory than what Schneider now asserts on appeal. In that sidebar, the State revealed its plans for the witness: "I'm not going to show any of the pornography [other than] the charged pornography. However, I'm going to mention the **amount of videos**, the **amount of still images**, just like I did in my opening, **and** I will ask him to **read the file names of certain files** that were found on the computer." (Emphasis added.) Defense counsel replied, "I would **object to the file names being read** for any file. It is not a charged offense." (Emphasis added.) Thus,

---

[6] It appears defense counsel was aware of the importance of renewing objections to pretrial orders, as she specifically renewed her pretrial objections to the trial court's admission of Schneider's confession and to the trial court's admission of State's Exhibit 43.

14

the record clearly reflects that defense counsel objected to the file names being read into evidence, but not the amount of videos and the amount of still images. Defense counsel's specific objection to the file names being read does not extend to cover any reference to the amount of uncharged child-pornography files found.[7]

Because Schneider did not renew his motion in limine at trial and because his theory of trial-court error on appeal is different from the theory that underpinned his specific objection at trial, Schneider has waived his argument on appeal.

### B.    Standard of Review

On appeal, we may review an unpreserved claim of error only for plain error. State v. Celis-Garcia, 344 S.W.3d 150, 154 (Mo. banc 2011). We may review, in our discretion, plain errors affecting substantial rights if failing to grant relief would result in the miscarriage of justice or manifest injustice. White, 466 S.W.3d at 686. Errors are plain if they are evident, obvious, and clear. Id. "We will only grant relief under the plain error standard if we find that the error substantially affected the defendant's rights such that a manifest injustice or a miscarriage of justice would result if the error is left uncorrected." Id. Plain error can only serve as the basis for granting a new trial if the error was outcome determinative. Id.

### C.    No Error Occurred

Despite Schneider's failure to preserve his argument, we exercise our discretion to review for plain error. We conclude that the trial court committed no error in allowing evidence relating to child pornography files for which Schneider was not charged, much less plain error.

---

[7] Had defense counsel wanted to object to the amount of videos, the amount of still images, and the reading of the file names, she could have specifically renewed her motion in limine (which argued against evidence of the amount of images and still videos) and additionally objected to the file names being read. Alternatively, defense counsel could have objected to any reference whatsoever of the uncharged child pornography as uncharged bad acts.

15

Generally, evidence of prior uncharged crimes and prior bad acts is inadmissible to show the defendant's propensity to commit such crimes. State v. Bernard, 849 S.W.2d 10, 13 (Mo. banc 1993). Several exceptions exist under which otherwise inadmissible evidence may be admitted for a different purpose. State v. Primm, 347 S.W.3d 66, 70 (Mo. banc 2011). Such evidence may be admissible if it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; or (5) the identity of the person charged with commission of the crime on trial. Id. Additionally, evidence of uncharged crimes that is part of the circumstances or the sequence of events surrounding the offense charged may be admissible "to present a complete and coherent picture of the events that transpired." Id.

If the State relies on intent or absence of mistake as the basis for the admission of otherwise inadmissible evidence, it is necessary that intent and/or mistake be legitimate issues in the case. State v. Moore, 352 S.W.3d 392, 402 (Mo. App. E.D. 2011). For each of the seven counts in this case, the State was required to prove Schneider "knowingly or recklessly" possessed the images and videos containing child pornography. See Section 573.037.1. The intent element was a legitimate issue at trial because, as stated by Schneider's defense counsel during closing argument, "the ultimate issue is going to come down to whether you believe that the defendant knowingly possessed the items of child pornography."

The State maintains that the presence of thousands of uncharged images and videos containing child pornography on Schneider's hard drives is admissible as evidence of Schneider's absence of mistake. The uncharged images and videos tended to show that Schneider "knowingly" possessed the images and videos actually charged as crimes. Schneider

16

argued as a defense to the charges raised against him that, while he consciously downloaded adult pornography for his sexual gratification, he never knowingly downloaded child pornography. Defense counsel argued to the jury during closing argument that Schneider could have accidentally downloaded child pornography while downloading adult pornography. Defense counsel's argument may have been persuasive had police found only a few files containing illegal child pornography interspersed with Schneider's collection of legal adult pornography. However, the plausibility of this defense is significantly diminished by the presence of thousands of illegal child-pornography files found on several different computers and hard drives. Evidence of the thousands of uncharged child-pornography files was admissible because such evidence tended to prove that Schneider did not mistakenly download a few illegal files among his legal adult-pornography files.

Because the State's evidence of Schneider's uncharged bad acts was admissible as evidence that tends to prove absence of mistake, the trial court did not err, much less plainly err, in admitting the evidence at trial. Point Two is denied.

## Conclusion

The judgment of the trial court is affirmed.

_____
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa Van Amburg, C.J., concurs.

17