

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED111402 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Jefferson County |
| v. | ) | Case No. 21JE-CR01264-01 |
| | ) | |
| PATRICIA BOEHMER, | ) | Honorable Victor J. Melenbrink |
| | ) | |
| Appellant. | ) | Filed: May 14, 2024 |

## Introduction

Patricia Boehmer (Boehmer) appeals from the judgment and sentence of the trial court convicting her of one count of possession of a controlled substance. Boehmer argues the trial court erred in overruling her motion to suppress evidence seized pursuant to a warrantless search. We affirm.

## Background

The State charged Boehmer as a prior and persistent offender, a prior and persistent drug offender, and a persistent misdemeanor offender with one count of the class D felony of possession of a controlled substance, in that on April 1, 2020, she knowingly possessed methamphetamine.

Before trial, Boehmer filed a motion to suppress the methamphetamine seized by law enforcement. She argued the methamphetamine was seized not incident to an arrest,

without consent, without a search warrant, without probable cause, and not within the scope of any exception to the warrant requirement. After a hearing on the motion, the trial court denied her motion to suppress.[1]

At a bench trial, the State adduced the following evidence. On April 1, 2020, at a Walmart in DeSoto, Missouri, the Walmart asset protection (AP) investigator observed Boehmer placing items in her backpack. When Boehmer attempted to leave without paying for those items, the AP investigator intercepted Boehmer and led her to the AP office. The AP investigator recognized Boehmer as having previously been caught shoplifting at least twice before, resulting in her having been banned from entering the store. The AP investigator contacted the police with the intent to request Boehmer be prosecuted for stealing and trespass.

The arresting officer (Officer C.) testified as follows. He and another officer (Officer M.) responded to a dispatch call to Walmart for a reported shoplifting and trespass. The AP investigator advised the officers that Boehmer had stolen several items and was trespassing, as she had previously been banned from the store, from which the officers determined there were grounds to arrest Boehmer. Officer M. searched Boehmer incident to her arrest, and the search revealed a small cannister in her pocket containing a crystal-like substance that was later determined to be methamphetamine. At the time of Boehmer's arrest in April of 2020, police department procedure was for mobile booking, due to the COVID pandemic. Mobile booking meant that the officers would book some detainees in their police vehicles rather than transporting the detainees to the police station for booking.

---

[1] As part of the hearing on the motion to suppress, counsel for Boehmer introduced a body camera video from the arresting officer. This video was later admitted as Defense Exhibit A and the parties consented that the trial court could consider the video evidence for any purpose.

Regardless, the officers always conducted a search of persons taken into custody, whether the booking occurred at the police station or at the police vehicle.

On cross-examination, Officer C. agreed that review of the body camera footage of the arrest revealed the following. When he and Officer M. arrived at Walmart and asked what the AP investigator wanted to do with Boehmer, the AP investigator told them that a citation would be fine. Officer M. informed Boehmer that she would be booked in the parking lot, released, and receive a citation. The officers did not handcuff Boehmer in the AP office or "formally" inform her that she was under arrest before performing a search. After the search during which they discovered the methamphetamine, the officers formally informed Boehmer she was under arrest and placed her in handcuffs.

Officer M. testified to the following. She and Officer C. responded to Walmart for a reported shoplifting and determined that the suspect, Boehmer, would be taken into custody. After Boehmer was detained in the store but, before she was formally arrested, Officer M. performed a pat down for officer safety, during which Officer M. asked Boehmer if she had any weapons on her, and Boehmer responded that she had something "bad." During the search, Officer M. discovered in Boehmer's left front jeans pocket a container with a white crystal-like substance that appeared to be methamphetamine.

At the close of evidence, the trial court announced its verdict of guilty as to the sole count of possession of a controlled substance. The trial court sentenced Boehmer to a term of twelve years in the Missouri Department of Corrections but suspended the execution of her sentence and placed her on probation for a period of five years. This appeal follows.

Discussion

3

In her only point on appeal, Boehmer argues the trial court erred in overruling her motion to suppress and in admitting the evidence discovered during the search of her person because the search was not performed incident to an arrest, in that the officers did not intend to arrest Boehmer prior to their search and did not have reasonable suspicion during their protective pat-down that the canister found in her pocket was a weapon that would have justified searching the contents of the canister.[2]  We disagree.

We review the trial court's ruling on a motion to suppress for whether the decision is supported by substantial evidence.  State v. Scherrer, 673 S.W.3d 899, 914 (Mo. App. E.D. 2023).  In making this determination, we consider both the evidence presented at the suppression hearing and at trial, and we view the facts and any reasonable inferences therefrom in the light most favorable to the court's ruling.  Id.  We will reverse only if the trial court's ruling is clearly erroneous, meaning that we are left with a firm and definite impression that the trial court has made a mistake.  Id.  While we defer to the trial court's credibility determinations and findings of fact, the issue of whether a suspect was in custody is an issue of law that we review de novo.  State v. Schneider, 483 S.W.3d 495, 500 (Mo. App. E.D. 2016).

Both the United States and the Missouri constitutions guarantee the rights of individuals to be free from unreasonable searches and seizures.  U.S. Const. amend. IV; Mo. Const. Art. 1, §15; State v. Rushing, 935 S.W.2d 30, 34 (Mo. banc 1996).  When evidence is obtained in violation of this right, the exclusionary rule precludes its use in a criminal proceeding.  State v. Carrawell, 481 S.W.3d 833, 837 (Mo. banc 2016).

---

[2] We do not address Boehmer's argument that the search of the small canister in Boehmer's pocket exceeded the proper scope of a protective pat-down, known as a Terry stop, see Terry v. Ohio, 392 U.S. 1 (1968), because we hold the search was performed incident to Boehmer's arrest and was not a Terry stop.

4

"Warrantless searches are *per se* unreasonable under the Fourth Amendment, unless an established and well-delineated exception applies." Id. at 838 (citation and internal quotation marks removed). The established exceptions include searches incident to arrest, which allows officers to search the arrestee's person and the area within his or her immediate control, meaning the area within which he or she might be concealing a weapon or destructible evidence. Id. The purpose of this exception is to protect officer safety and to preserve evidence, and this exception does not require additional justification for the search beyond the lawful arrest. Greene v. State, 585 S.W.3d 800, 805 (Mo. banc 2019); see also State v. Salcedo, --- S.W.3d ---, 2024 WL 1057071 (Mo. App. W.D. 2024) (search incident to arrest does not require reasonable probability that suspect actually have weapons or evidence on his or her person).

Here, Boehmer argues she was not under arrest at the time of the search, and thus the search was unreasonable, making any evidence discovered during that search inadmissible under the exclusionary rule. We disagree. "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise." Section 544.180, RSMo. cum. supp. 2022. We determine whether a suspect was in custody by looking at the totality of the circumstances. State v. Ajak, 543 S.W.3d 43, 50 (Mo. banc 2018) ("what is necessary to constitute restraint depends on the specific circumstances of each case"). "A person may be said to be under arrest from the moment the police officer takes control of his movements." Id. (citation omitted)); see also State v. Stokes, 387 S.W.2d 518, 522 (Mo. 1965) ("defendant was under arrest from the time the officer took control of his movements and directed him to 'stand up'").

5

There is no definite requirement that the defendant be physically restrained with handcuffs if the overall circumstances demonstrate the defendant would not reasonably believe he or she is free to go, such as if the defendant is otherwise surrounded and physically limited by police officers. See State v. Ikerman, 698 S.W.2d 902, 905 (Mo. App. E.D. 1985) (*abrogated on other grounds by* State v. McNeely, 358 S.W.3d 65 (Mo. banc 2012)) (defendant was under arrest, even if not formally, when circumstances showed officers were in control of his movements and he would not reasonably believe he was free to go, in that he was surrounded by several police officers and given Miranda warning). Likewise, the arresting officer need not specifically say "you are under arrest" when the circumstances indicate that the officer is arresting the suspect. State v. St. George, 215 S.W.3d 341, 347 (Mo. App. W.D. 2007).

The totality of the circumstances here demonstrate that Boehmer was under arrest when Officer M. performed the search that exposed the canister of methamphetamine in Boehmer's pocket. While it is true that the officers did not place Boehmer in handcuffs or formally state that she was under arrest before Officer M. performed the search, the officers were in control of Boehmer's movements, in that they had blocked her exit from the AP office and had informed her that she would not be released until after she had been booked and photographed at the police vehicle. See Ikerman, 698 S.W.2d at 905. A reasonable person would understand that under these circumstances they were not free to go until after being booked and photographed, and thus that they were in the custody and control of the police. See Ajak, 543 S.W.3d at 50 ("[a] person may be said to be under arrest from the moment the police officer takes control of his movements").

6

Further, it was not necessary that the officers intended to transport Boehmer to the police department in order to justify a search incident to arrest. Boehmer's arrest occurred in April of 2020, and police department procedure at that time was for mobile booking for certain offenders, due to the COVID pandemic. The mobile format does not change the purpose behind performing a search incident to arrest, which is to protect officer safety and to preserve evidence. See Greene, 585 S.W.3d at 805.

The trial court did not clearly err in denying Boehmer's motion to suppress the drug evidence because its finding that the evidence was discovered during a search incident to her arrest was supported by substantial evidence.

Point denied.

## Conclusion

The judgment and sentence of the trial court is affirmed.

_____
Gary M. Gaertner, Jr., J.

Lisa P. Page, P.J., and
Angela T. Quigless, J., concur.

7