In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

STATE OF MISSOURI, ) No. ED109736
 )
 Appellant, ) Appeal from the Circuit Court
 ) of St. Charles County
vs. )
 ) Honorable Deborah J. Alessi
CADEN N. YBARRA, )
 )
 Respondent. ) Filed: November 23, 2021

 The State of Missouri brings this interlocutory appeal after the Circuit Court of St.

Charles County sustained, in part, the motion of Defendant, Caden N. Ybarra, to suppress

statements he made and physical evidence revealed during and after a traffic stop. We reverse in

part and affirm in part, and remand for further proceedings.

 We reverse the trial court’s suppression of Defendant’s statements made during the traffic

stop because Defendant was not subjected to custodial interrogation during the traffic stop, so

Miranda warnings were not necessary.1 Likewise, we reverse the trial court’s suppression of the

evidence of cocaine Defendant voluntarily revealed during the traffic stop because we find no

violation of Defendant’s Fourth or Fifth Amendment rights, in that Defendant was not

unlawfully seized or in custody.

1
 In Miranda v. Arizona, 384 U.S. 436, 444 (1966), the U.S. Supreme Court stated “[p]rior to any questioning, the
person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence
against him, and that he has a right to the presence of an attorney, either retained or appointed.”
 We affirm the trial court’s suppression of Defendant’s pre-Miranda statements made at

the hotel after the traffic stop because Defendant at that point was subjected to custodial

interrogation, and thus entitled to Miranda warnings.

 Factual and Procedural Background

 Following a traffic stop, the State charged Defendant with three felony counts of

possession of a controlled substance and one misdemeanor count of possession of marijuana.

Defendant filed motions to suppress incriminating statements he made during and after the traffic

stop along with the cocaine he revealed to police during the stop.

 When reviewing a trial court’s order suppressing evidence, we view the facts and the

reasonable inferences from those facts in the light most favorable to the trial court’s ruling. State

v. Selvy, 462 S.W.3d 756, 760 (Mo. App. E.D. 2015). In the early morning of July 31, 2019,

Defendant was one of two passengers in a car driven by John Andrew, which was traveling west

on Interstate 70 in St. Charles County, Missouri. At approximately 1:29 a.m., Missouri Highway

Patrol Trooper Brodie Waaso observed the car driving 89 miles per hour in a 60-miles-per-hour

zone, “bouncing back and forth” between lanes, and following another vehicle too closely.

Trooper Waaso pursued the car, and pulled it over at 1:31 a.m. Andrew was in the driver’s seat,

Defendant was in the front passenger seat, and a third man was in the back driver’s-side seat.

Trooper Waaso approached the car and smelled a moderate odor of alcohol on the driver’s breath

and saw a small amount of what he believed to be “marijuana shake” on the vehicle’s center

console. Trooper Waaso asked the driver to exit the car, and detained the driver in the patrol car

to begin a DWI investigation. Defendant and the other passenger remained in the car.

 In the patrol car, Trooper Waaso inquired about the driver’s alcohol and marijuana

consumption. After learning that Trooper Waaso would search the car, the driver admitted there

 2
was “some” marijuana and cocaine in the car although he did not know where. Trooper Waaso

conducted a preliminary breath test followed by field sobriety tests of the driver, which the driver

failed. Meanwhile, Officer Mutz with the St. Peters Police Department arrived to assist Trooper

Waaso. Officer Mutz remained near the car where Defendant and the other passenger remained

seated. Trooper Waaso arrested the driver for DWI, handcuffed him, read him the Missouri

Implied Consent Law and Miranda warnings, and secured him in the patrol car.

 After his arrest and post-Miranda while restrained in the patrol vehicle, the driver again

admitted there was cocaine and marijuana in the car. The driver stated his passengers may have

tried to hide the drugs. Based on these statements, Trooper Waaso approached the car to confront

both passengers about the drugs, and testified his investigation had shifted focus from a DWI

investigation to a drug investigation. At 1:58 a.m., Trooper Waaso asked Defendant and the other

passenger to step out of the car, and patted them down for safety. Trooper Waaso did not give the

men Miranda warnings. Trooper Waaso testified he advised both men of the driver’s statement,

told them he knew there were drugs in the car, and asked about their location. In response,

Defendant told Trooper Waaso he had cocaine in a sock, and Defendant pulled a baggie filled

with a white powdery substance from his sock. Defendant also told Trooper Waaso there was

marijuana located under the passenger seat.

 After retrieving the white powdery substance, Trooper Waaso instructed Defendant and

the other passenger to remain with Officer Mutz while Trooper Waaso searched the passenger

compartment of the car. The two passengers were further detained, but not handcuffed or

physically restrained. Trooper Waaso found and seized the marijuana under the passenger seat,

and also found marijuana in the storage pocket behind the driver’s seat. Trooper Waaso’s

dashcam video shows the detention of both passengers and the search of the car. Thereafter,

 3
Trooper Waaso walked back to his patrol car, at which time the driver stated the drugs were his

idea, stated the drugs were all his, and asked Trooper Waaso not to charge his friends.

 Trooper Wasso then called for a tow truck. Trooper Waaso did not arrest Defendant.

Instead, Trooper Waaso instructed Officer Mutz to drive Defendant and the other passenger to a

hotel because they were from out-of-state and needed a place to stay since their driver had been

arrested. Officer Mutz transported Defendant and the other passenger from the scene in the back

of his patrol car at 2:23 a.m. to a hotel. Trooper Waaso testified that when the tow truck arrived,

he realized he forgot to search the trunk of the car as part of a standard tow inventory search.

Trooper Waaso discovered a backpack in the trunk, and inside the backpack, he discovered

Defendant’s student identification and a baggie containing what appeared to be marijuana

residue.

 As a result, Trooper Waaso radioed dispatch at 2:26 a.m. with instructions for Officer

Mutz not to let Defendant go because Trooper Waaso wanted to question him further about the

backpack. Defendant was still detained in the back of Officer Mutz’s patrol car when Trooper

Waaso arrived at the hotel at 2:43 a.m. Trooper Waaso testified that Defendant was not free to

leave. Trooper Waaso confronted Defendant with the backpack, asked if it belonged to him, and

asked if the marijuana belonged to him. Trooper Waaso did not advise Defendant of his Miranda

rights before confronting him with the backpack and marijuana and questioning him. When

Defendant confessed the backpack and marijuana were his, Trooper Waaso arrested and

handcuffed him. Trooper Waaso gave Defendant the Miranda warnings post-arrest.

 After Defendant was arrested and read his Miranda warnings, Trooper Waaso searched

the backpack and found four pills, later identified as clonazepam and oxycodone. Defendant

made post-arrest statements that are not at issue in this appeal. The State charged Defendant with

 4
four drug-related offenses: Count I, possession of a controlled substance (cocaine); Count II,

possession of a controlled substance (clonazepam); Count III, possession of a controlled

substance (oxycodone); and Count IV, possession of marijuana. Defendant filed motions to

suppress statements and evidence. The trial court held a suppression hearing, and Trooper Waaso

testified as the sole witness. The State also entered into evidence Trooper Waaso’s dashcam

video showing the traffic stop, but not the exchange at the hotel.

 The court issued the following order on the motions to suppress:

 1. As to defendant’s statements at the scene of the traffic stop, Defendant’s motion is
 GRANTED. Defendant was entitled to Miranda warnings. The Trooper was not
 asking the defendant a moderate number of questions in order to obtain information
 confirming or dispelling his suspicions. At this point, he already knew that drugs
 were in the vehicle. Defendant’s freedom to leave was dependent upon the police
 officer because the defendant did not have transportation.
 2. Defendant’s motion to suppress the cocaine evidence is GRANTED. The cocaine is
 the fruit of the poisonous tree.
 3. Defendant’s motion to suppress statements made by the defendant at the hotel is
 GRANTED. Defendant was entitled to Miranda warnings.
 4. Defendant’s motion to Suppress [sic] the evidence seized from defendant’s backpack
 is DENIED. Search of defendant’s backpack was lawful under the automobile
 exception and the inventory search exception.

The State appeals the suppression of Defendant’s statements during the traffic stop and at the

hotel, and the cocaine evidence seized during the traffic stop.

 Discussion

 In three points on appeal, the State challenges the trial court’s suppression of Defendant’s

statements made during the traffic stop, the cocaine contained in Defendant’s sock that he

revealed during the traffic stop, and Defendant’s statements made at the hotel. The State

contends that Defendant was not subjected to custodial interrogation that would necessitate

Miranda warnings.

 5
 Standard of Review

 In a motion to suppress, the State bears the burden to show by a preponderance of the

evidence that the trial court should deny the motion. Section 542.296.6 RSMo. (2016); 2 Selvey,

462 S.W.3d at 764. The State may appeal any order or judgment that results in the suppression of

evidence. Section 547.200.1. We will reverse a trial court’s ruling on a motion to suppress only if

it is clearly erroneous. State v. Lindsay, 599 S.W.3d 532, 535 (Mo App. E.D. 2020). The trial

court’s ruling is clearly erroneous if we are left with a definite and firm belief that a mistake has

been made. State v. Stricklin, 558 S.W.3d 54, 61 (Mo. App. E.D. 2018).

 When reviewing a trial court’s ruling on a motion to suppress, we limit our review to

determining whether substantial evidence supports the decision, and we defer to the trial court’s

factual findings and credibility determinations. Lindsay, 599 S.W.3d at 535. When the trial

court’s ruling is plausible in light of the entire record, we will not reverse the decision even

though convinced we would have weighed the evidence differently had we been sitting as the

trier of fact. Id. Nevertheless, whether the Fifth Amendment or any other provision of the United

States Constitution has been violated is a question of law that we review de novo. Stricklin, 558

S.W.3d at 61. Likewise, whether a person was in custody is an issue of law that we review de

novo. State v. Schneider, 483 S.W.3d 495, 500 (Mo. App. E.D. 2016).

 Statements Made During the Traffic Stop

 In its first point on appeal, the State claims the trial court clearly erred in granting

Defendant’s motion to suppress his statements made during the traffic stop. The State contends

2
 All statutory references are to RSMo. (2016).

 6
Defendant was not subjected to a custodial interrogation that would have entitled him to receive

Miranda warnings. Specifically, the State argues Defendant was not in custody.3

 The Fifth Amendment to the United States Constitution provides that no person shall be

compelled to be a witness against himself in any criminal case.

 [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming
 from custodial interrogation of [a] defendant unless it demonstrates the use of procedural
 safeguards effective to secure the privilege against self-incrimination. By custodial
 interrogation, we mean questioning initiated by law enforcement officers after a person
 has been taken into custody or otherwise deprived of his freedom of action in any
 significant way. As for the procedural safeguards to be employed, unless other fully
 effective means are devised to inform accused persons of their right of silence and to
 assure a continuous opportunity to exercise it, the following measures are required. Prior
 to any questioning, the person must be warned that he has a right to remain silent, that
 any statement he does make may be used as evidence against him, and that he has a right
 to the presence of an attorney, either retained or appointed.

Berkemer v. McCarty, 468 U.S. 420, 428-29 (1984) (quoting Miranda v. Arizona, 384 U.S. 436,

444 (1966)).

 “Statements made during a custodial interrogation are inadmissible against a suspect on

the issue of that suspect’s guilt of the charged offense unless police first inform the suspect of his

or her rights under the Fifth Amendment.” State v. Little, 604 S.W.3d 708, 716 (Mo. App. E.D.

2020). “Custodial interrogation has two components: custody and interrogation.” Id. We

determine whether a person is in custody by examining the totality of the circumstances.

Schneider, 483 S.W.3d at 501. A person is only in custody for purposes of a custodial

interrogation if he or she is either formally arrested or subjected to “arrest-like restraints.” Little,

604 S.W.3d at 716. Interrogation includes both express questioning and its functional equivalent;

3
 There is no issue with the legality of the initial stop. Trooper Waaso had probable cause and reasonable suspicion
for a Terry stop. Thus, the focus of this appeal is whether the detention was reasonable and whether Defendant was
“in custody” for purposes of Miranda.

 7
that is, any words or actions police should know are reasonably likely to prompt an incriminating

response. Id.

 In suppressing Defendant’s traffic-stop statements, the trial court reasoned Trooper

Waaso went beyond asking Defendant a moderate number of questions in order to either confirm

or dispel his suspicions. The trial court observed that Trooper Waaso already knew drugs were in

the vehicle, and in addition, Defendant’s freedom to leave depended on the officer because

Defendant lacked transportation.

 Questioning pursuant to a routine traffic stop does not require Miranda warnings because

a traffic stop is analogous to a ‘Terry stop.4’” Lindsay, 599 S.W.3d at 536. See also Berkemer,

468 U.S. at 439 (stating usual traffic stop more analogous to so-called “Terry stop” than to

formal arrest). The officer may ask the suspect a moderate number of questions to determine his

or her identity, and to try to obtain information confirming or dispelling the officer’s suspicions.

Id. However, the suspect is not obligated to respond. Id. The U.S. Supreme Court held in

Berkemer that persons temporarily detained pursuant to a routine traffic stop are not “in custody”

for the purposes of Miranda.5 Id. at 440. Under the Fourth Amendment, a police officer who

lacks probable cause but whose observations lead the officer reasonably to suspect a particular

person has committed, is committing, or is about to commit a crime, may detain the person

briefly to investigate the circumstances that provoke suspicion. Id. at 439. Officers may detain

persons beyond the time necessary to investigate the traffic violation if the officer develops

4
 In Terry v. Ohio, 392 U.S. 1, 30 (1968), the United States Supreme Court held that an officer may stop and briefly
detain a person for questioning when the officer has a reasonable suspicion the person may be connected with
criminal activity.
5
 Justice Marshall’s Berkemer opinion acknowledged that a traffic stop significantly curtails the freedom of movement
of the occupants of the detained vehicle. 468 U.S. at 436. Under the law of most States, it is a crime either to ignore
an officer’s signal to stop or, once having stopped, to drive away without permission. Id. Nevertheless, the Supreme
Court stated that a traffic stop does not “exert[] upon a detained person pressures that sufficiently impair his free
exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.” Id. at 437.

 8
reasonable and articulable grounds to suspect illegal activity based on the behavior and responses

of the persons during the traffic stop. Selvy, 462 S.W.3d at 767; see also State v. Watkins, 73

S.W.3d 881, 883 (Mo. App. E.D. 2002) (new factual predicate for reasonable suspicion of

another crime found during lawful seizure may extend time seizure maintains its lawful character

beyond its initial purpose).

 Such is the case here. The driver’s admission of having drugs in the car gave Trooper

Waaso a new reasonable suspicion of other criminal activity as a basis to extend the detention for

purposes of investigation. We cannot say Defendant was illegally detained. Defendant was not

subjected to restraint from the time Trooper Waaso stopped the car at 1:31 a.m. until he

approached the car and asked the passengers to step out at 1:58 a.m. The Defendant was

permitted to remain seated in the car while Trooper Waaso detained the driver in the patrol car

for questioning and testing on suspicion of drunk driving. After exiting the car, Defendant and

the other passenger remained unrestrained until they left the scene with Officer Mutz at 2:23 a.m.

Even after handing over drugs, Defendant was not arrested or handcuffed, and was free to leave

the scene but for lack of transportation. This limited restraint of Defendant for 25 minutes is

permitted under Terry, and the detention was no longer than necessary to effectuate the purpose

of either confirming or dispelling the officer’s suspicion of drugs in the car.

 When a person detained pursuant to a traffic stop thereafter is subjected to treatment

rendering him or her “in custody” for practical purposes, the person becomes entitled to the full

array of protections prescribed by Miranda. Berkemer, 468 U.S. at 440. We determine whether a

person is in custody by considering the totality of the circumstances. State v. Werner, 9 S.W.3d

590, 595 (Mo. banc 2000); Schneider, 483 S.W.3d at 501. In Werner, our Missouri Supreme

Court identified several factors to help guide us in determining whether a person was “in

 9
custody.” 9 S.W.3d at 595. We find these factors instructive when called upon to determine

whether a routine traffic stop evolved to the point of custody. See State v. Wilson, 169 S.W.3d

870, 877 (Mo. App. W.D. 2005) (applying Werner factors to detention and questioning of

passenger after officer found marijuana in vehicle). Whether a person is free to leave the scene

along with the purpose, place, and length of questioning are factors courts consider in

determining whether a person was in custody, but those factors are not determinative. Werner, 9

S.W.3d at 595.

 Other indicia of custody include the following non-exhaustive list:

 (1) whether police informed the person at the time that the questioning was voluntary,
 that the person was free to leave or to ask to do so, or that the person was not under
 arrest;
 (2) whether the person possessed unrestrained freedom of movement during questioning;
 (3) whether the person initiated contact with authorities or rather voluntarily acquiesced
 to official requests to answer questions;
 (4) whether police employed strong-arm or deceptive tactics during questioning;
 (5) whether the atmosphere was police dominated; or
 (6) whether police arrested the person at the termination of questioning.

Id. Although determining custody is not limited to applying the enumerated factors, their

presence and absence guide us in assessing the totality of the circumstances surrounding

interrogations. Id. at 596. The affirmative presence of one or more of the first three factors

during questioning would tend to mitigate the existence of custody at the time of questioning. Id.

On the other hand, the affirmative presence of the last three factors would tend to aggravate the

existence of custody. Id. The ultimate question is not the weighing of the factors, but whether the

restraint on the person’s movement reached the degree associated with a formal arrest.

Schneider, 483 S.W.3d at 501.

 10
 Trooper Waaso’s investigation of the driver’s suspected drunk driving—the initial traffic

stop—evolved into a drug investigation stemming from specific, articulable facts leading

Trooper Waaso to suspect illegal activity based on the behavior and responses of the driver

during the traffic stop. Therefore, we evaluate the totality of the circumstances to determine

whether Defendant was in custody for purposes of Miranda. Considering the first Werner factor,

when police do not inform the person that he or she is free to decline to answer questions, the

absence of this factor has been identified as an important indication that a custodial setting exists.

Werner, 9 S.W.3d at 596. Here, Trooper Waaso did not inform Defendant that he was not

required to answer questions, a factor that weighs in favor of finding Defendant in custody.

However, this does not end the analysis.

 Restraint on a person’s freedom of movement during questioning also bears on whether

we find the person was in custody, and the relevant inquiry is the effect restraint has on the

person. Id. In this case, Defendant was not handcuffed or physically restrained in the patrol car,

and he was free to move about. This factor weighs against a finding that Defendant was in

custody during the traffic stop.

 The method used to summon the person for questioning is the third factor we consider in

determining whether a person is in custody. Id. at 597. An important consideration is whether the

person initiated contact with police, or merely submitted to official requests to answer questions.

Id. Mere acquiescence to an officer’s request to answer questions does not indicate that a person

voluntarily spoke with police, and was not in custody. Id. Here, this factor is mitigated as no

method was used to summon Defendant. Defendant was detained as part of the routine traffic

stop when police pulled over the car in which Defendant was a passenger. The officer may ask a

moderate number of questions to confirm or dispel the officer’s reasonable suspicion of illegal

 11
activity. Berkemer, 468 U.S. at 439. Defendant did not initiate contact with law enforcement, but

the record demonstrates he voluntarily acquiesced in answering Trooper Waaso’s questions.

Therefore, this factor weighs against finding Defendant was in custody during the traffic stop.

 Whether the person was subjected to strong-arm or deceptive tactics is the fourth Werner

factor that influences the custody assessment. 9 S.W.3d at 595. Defendant argues he was

subjected to strong-arm demands because Trooper Waaso said he knew drugs were present and

Defendant needed to reveal where the drugs were. We disagree with and are not persuaded by

Defendant’s characterization. These statements were reasonable in the course of the

investigation, and did not constitute deceptive strategies or strong-arm tactics. The record does

not support, nor does Defendant suggest, that he was threatened or intimidated in any way as he

was not the focus of the investigation. The lack of such tactics weighs against finding Defendant

was in custody during the traffic stop.

 Fifth, we consider whether the atmosphere was police-dominated when determining

whether a person was in custody at the time of questioning. Id. at 597. We are more likely to

view questioning that occurs in an atmosphere dominated by police as custodial than questioning

that does not occur in such an atmosphere. Id. In determining whether the atmosphere is police-

dominated, we consider the length of the interview. Id. There is no predetermined appropriate or

inappropriate length of interrogation, but the duration is significant in assessing the overall

setting and atmosphere in which questioning took place. Id. We also consider the place of an

interview, as well as whether police assumed control of the site and dictated the course of

conduct followed by the person questioned or others present at the scene. Id. When the conduct

of the police leads a person to believe the police have taken control of the scene, a court is more

likely to recognize the existence of custody. Id. Another example of police domination is the

 12
removal of the person from the presence of family, friends, or colleagues who might lend moral

support during the questioning and deter the person from making incriminating statements. Id.

 In this case, Trooper Waaso spoke with Defendant for only a few minutes after asking

both men to step out of the car. He informed them of the driver’s statements about the presence

of drugs in the car, and asked for the drugs’ location. Defendant was not taken to the police

station for questioning, physically restrained or isolated in any manner, detained apart from the

other passenger, or questioned for hours. According to the dashcam video, only 25 minutes

elapsed between Defendant’s removal from the car and his departure from the scene with Officer

Mutz. Trooper Waaso was not engaged in speaking with Defendant for all of those 25 minutes.

Here, we cannot say that any restraint was unreasonable, or the length of the interaction was

inappropriate. There were only two officers present at the traffic stop of the three men, which

occurred in public on a busy interstate. Therefore, this factor weighs against finding Defendant

was in custody.

 The final factor in assessing custody is whether the person was placed under arrest after

questioning. Id. at 598. Here, Defendant was not placed under arrest during the traffic stop, so

this factor weighs against finding Defendant was in custody.

 In addition, we disagree with the trial court’s conclusion that Defendant was in custody in

part because his freedom to leave was dependent upon Trooper Waaso because Defendant did

not have transportation. Defendant’s lack of transportation does not equal custody or arrest-like

restraint. Rather, it was the result of Defendant’s choice to ride in a car at 1:30 a.m. with an

impaired driver. The gratuitous gesture of driving Defendant to a nearby hotel was not a

detention or restraint.

 13
 After considering the totality of the circumstances, we hold Defendant was not in custody

during the traffic stop because the restraint on him did not rise to the degree associated with

formal arrest or arrest-like restraints. Because Defendant was not in custody, he was not

subjected to custodial interrogation for purposes of Miranda warnings.

 Defendant relies on State v. Wilson to argue that, in fact, he was taken into custody. 169

S.W.3d 870. In that case, Wilson was arrested, handcuffed, and placed in the patrol car without

receiving Miranda warnings. Id. at 877. The Western District concluded that, even if Wilson

were not under arrest, the totality of the circumstances demonstrated he was under arrest-like

circumstances at the time police questioned him about the marijuana and ownership of the duffle

bags found in the vehicle. Id. at 877-78. Thus, Wilson is readily distinguishable.

 We agree with the State that Defendant was not in custody during the traffic stop on I-70.

Trooper Waaso had reasonable suspicion to stop the speeding, weaving car in the first instance,

and he developed reasonable suspicion to further investigate the presence of drugs in the car

following his own observations and the driver’s admissions. Defendant was not subjected to

arrest-like restraints. As stated above, he was neither handcuffed nor placed in the patrol car, and

he was free to move about. Trooper Waaso employed no strong-arm or deceptive tactics. The

traffic stop took place on a busy public highway, and the atmosphere was not police-dominated.

Defendant was not detained longer than necessary for this routine traffic stop. Trooper Waaso

questioned Defendant briefly for a reasonable time, asking him a moderate number of questions,

and took no longer than was reasonable to either confirm or dispel his reasonable suspicions of

illegal drug activity and to search the passenger compartment of the vehicle following the

driver’s admissions regarding the presence of drugs. Finally, Trooper Waaso did not tell

Defendant he was under arrest, and in fact, Defendant was not arrested during the traffic stop.

 14
Instead, he was released to go to a hotel. The U.S. Supreme Court has held that these routine

stops do not render a person “in custody” for purposes of Miranda. Berkemer, 468 U.S. at 440.

 The totality of the circumstances demonstrate Defendant was not in custody because the

restraint on him did not rise to a degree associated with formal arrest. Therefore, Defendant was

not subjected to custodial interrogation, and as a result, police were not required to give him

Miranda warnings before questioning him during the traffic stop. The trial court clearly erred in

suppressing statements Defendant made to Trooper Waaso during the traffic stop on I-70. We

grant the State’s first point.

 Evidence of Cocaine

 In Point II, the State claims the trial court clearly erred in granting Defendant’s motion to

suppress the cocaine contained in his sock as the “fruit of the poisonous tree.” The State

contends there was no Fourth Amendment violation, arguing the discovery and seizure of the

cocaine did not suffer any infirmity, and is admissible at trial for the same reasons discussed in

Point I.

 The Fourth Amendment allows a Terry stop, a minimally intrusive form of seizure or

“semi-arrest” that is lawful when a police officer has a reasonable suspicion supported by

articulable facts that the person stopped is engaged in criminal activity. State v. Miller, 894

S.W.2d 649, 651 (Mo. banc 1995) (citing Terry v. Ohio, 392 U.S. 1 (1968)). Police are allowed

to conduct a Terry stop of a moving vehicle upon a reasonable suspicion that the occupants are

involved in criminal activity. Id. “A routine traffic stop based upon an officer’s observation of a

violation of state traffic laws is a reasonable seizure under the Fourth Amendment.” Lindsay, 599

S.W.3d at 536. Police do not violate the Fourth Amendment merely by approaching a person in

public, asking if he or she will answer questions, asking questions if the person is willing to

 15
listen, or offering the voluntary answers to such questions in evidence in a criminal prosecution.

Florida v. Royer, 460 U.S. 491, 497 (1983).

 Defendant relies on Miller and Royer to argue the State failed to demonstrate the

voluntariness of his production of the cocaine was sufficiently independent from his allegedly

illegal detention to purge the taint. Both Miller and Royer are distinguishable. In Miller, our

Supreme Court found the initial police stop was illegal, and the following search activity was not

sufficiently attenuated to purge the taint of the illegal stop. 894 S.W.2d at 650. Here, in contrast,

we have determined that the initial stop was legal. Trooper Waaso observed the vehicle speeding,

weaving, and following another vehicle too closely, and thus had reasonable suspicion to believe

violations of Missouri traffic laws were occurring. Further, after stopping the vehicle, Trooper

Waaso observed marijuana in the vehicle. The driver also stated cocaine and marijuana were

present in the vehicle, and the passengers may have tried to hide the drugs. This information

gave Trooper Waaso reasonable suspicion based on articulable facts to believe additional

criminal activity involving drugs was afoot, and to believe Defendant knew of that criminal

activity.

 In Royer, two detectives who believed Royer fit the “drug courier profile” confronted

Royer on his way to the boarding area of the Miami airport, asking if he had a “moment” to talk

with them, and Royer agreed. 460 U.S. at 493-94. The detectives asked for and retained Royer’s

ticket and identification, escorted him to a small enclosed police room, retrieved his checked

luggage from the airline without his consent or agreement, and then asked for consent to search

his luggage. Id. at 494. Royer did not respond verbally, but produced a key to one of the

suitcases. Id. Without seeking further consent and without a search warrant, the detectives

opened the suitcase, found marijuana, and arrested Royer. Id. The U.S. Supreme Court found that

 16
any consensual aspect of the encounter had evaporated, and Royer was illegally detained. Id. at

503. The detectives’ “conduct was more intrusive than necessary to effectuate an investigative

detention otherwise authorized under the Terry line of cases. Id. at 504. Here, again, we have

determined the initial stop was legal, and the questioning of Defendant during the traffic stop did

not amount to a custodial interrogation. Defendant’s Fourth and Fifth Amendment rights were

not violated. Thus, it reasons there was no taint.

 The record reveals Trooper Waaso testified to specific, articulable facts creating an

objectively reasonable suspicion that Defendant knew of criminal activity. Given our

determination that Defendant was neither unlawfully seized nor in custody when he voluntarily

gave the cocaine he was concealing to Trooper Waaso, we conclude the trial court clearly erred

in suppressing the cocaine evidence. We grant the State’s second point.

 Statements Made At the Hotel

 Finally, the State claims the trial court clearly erred in granting Defendant’s motion to

suppress his statements made at the hotel. The State argues Defendant was not entitled to

Miranda warnings because Trooper Waaso asked Defendant a single question in a public place

that was not police-dominated, Defendant was not restrained, and no strong-arm or deceptive

tactics were used. In short, the State argues Defendant was not “in custody.” We disagree.

 As discussed in Point I, we examine several factors to determine whether, under the

totality of the circumstances, a person is “in custody” for purposes of Miranda. We consider the

totality of the circumstances surrounding Defendant’s statements at the hotel separately from his

statements during the traffic stop on I-70 because Trooper Waaso had released Defendant from

the traffic stop, and initiated a new exchange with Defendant at the hotel.

 Whether an accused is free to leave the scene along with the purpose, place, and length of

 17
questioning are factors courts consider in determining whether a person was in custody. Werner,

9 S.W.3d at 595. Those factors are not determinative, and other indicia of custody include:

 (1) whether police informed the person at the time that the questioning was voluntary,
 that the person was free to leave or to ask to do so, or that the person was not under
 arrest;
 (2) whether the person possessed unrestrained freedom of movement during questioning;
 (3) whether the person initiated contact with authorities or voluntarily acquiesced to
 official requests to answer questions;
 (4) whether police employed strong-arm or deceptive tactics during questioning;
 (5) whether the atmosphere was police dominated; or
 (6) whether police arrested the person at the termination of questioning,

which we use as a guide in assessing the totality of the circumstances. Id.

 According to Trooper Waaso’s testimony, he released Defendant and the other passenger

from detention at the traffic stop so that Officer Mutz could drive them to a nearby hotel. After

the two men left the scene of the traffic stop, Trooper Waaso conducted an inventory search of

the car’s trunk and discovered a backpack containing Defendant’s student identification and a

baggie with what appeared to be marijuana residue. Trooper Waaso radioed dispatch with

instructions for Officer Mutz not to let Defendant go because Trooper Waaso wanted to question

Defendant about the backpack containing his identification and marijuana residue. As a result,

Defendant was detained in Officer Mutz’s patrol car. Unlike the traffic stop, Defendant, in fact,

was not free to leave and was restrained in his freedom of movement. Both facts weigh in favor

of finding Defendant was in custody. The fact that Defendant remained detained in the patrol car,

under guard, with limited movement, is a restraint associated with persons who have been

arrested.

 Here, it is undisputed that Trooper Waaso initiated contact at the hotel. Trooper Waaso

called ahead and summoned for Defendant to be held. While not handcuffed, Defendant was not

 18
free to leave, and his actions were curtailed as he remained in the patrol car before and during

questioning. It cannot be said that Defendant at this point voluntarily acquiesced to submit

himself to the officer’s request. See id. at 597 (stating mere acquiescence to officer’s request to

answer questions does not indicate person is talking voluntarily with police and is not in

custody.) Therefore, this factor also weighs in favor of a finding of custody at the hotel.

 The record reveals no indication that police used strong-arm or deceptive tactics. We

acknowledge Defendant was not taken to the police station for questioning; however, courts are

free to consider whether the police assumed control of the scene such that it dictates the conduct

of the person being questioned. Id. These factors weigh in favor of finding custody. Finally, here,

Defendant was arrested immediately after answering Trooper Waaso’s questions, which weighs

in favor of finding Defendant was in custody at the hotel. In weighing these six enumerated

Werner factors and in assessing the totality of the circumstances, Defendant was in custody at the

hotel. A reasonable person would not believe he or she was free to leave.

 Having found Defendant to be in custody, we address whether Defendant was subjected

to interrogation at the hotel. Interrogation includes express questioning and its functional

equivalent, meaning any words or actions police should know are reasonably likely to prompt an

incriminating response. Little, 604 S.W.3d at 716. Trooper Waaso arrived at the hotel parking lot

where Defendant was detained. Trooper Waaso had the backpack in which he already found

Defendant’s identification and marijuana residue. Without giving Defendant Miranda warnings,

Trooper Waaso asked whether the backpack belonged to Defendant. When Defendant confessed

the backpack was his, Trooper Waaso asked whether the marijuana residue belonged to him, and

Defendant admitted that it did. While Trooper Waaso did not formally arrest Defendant until

after he incriminated himself, Defendant was subjected to interrogation. Defendant was

 19
subjected to express questioning by Trooper Waaso, who knew the questions about the backpack

and marijuana were reasonably likely to elicit an incriminating response from Defendant.

Trooper Waaso handcuffed Defendant, formally arrested him, and only then gave him Miranda

warnings.

 We find under the totality of the circumstances that Defendant was subjected to custodial

interrogation at the hotel, and therefore, was entitled to receive Miranda warnings before

Trooper Waaso confronted him regarding the backpack and marijuana residue. The trial court

correctly suppressed Defendant’s incriminating statements made at the hotel as Miranda

warnings were required. We deny the State’s third point.

 Conclusion

 We reverse in part, and affirm in part. As to Point I, we reverse the trial court’s

suppression of Defendant’s statements made during the traffic stop because Defendant was not

“in custody” for purposes of Miranda, so warnings were not required. As to Point II, we reverse

the trial court’s suppression of the cocaine Defendant voluntarily revealed during the traffic stop

because we find no violation of Defendant’s Fourth or Fifth Amendment rights, in that he was

not unlawfully seized or in custody.

 As to Point III, we affirm the trial court’s suppression of Defendant’s pre-Miranda

statements made at the hotel because Defendant at that point was in custody and subjected to

custodial interrogation, and thus entitled to Miranda warnings.

 We remand to the trial court for further proceedings consistent with this opinion.

 ______________________________
 Angela T. Quigless, P.J.

Philip M. Hess, P.J., and
Colleen Dolan, J., concur.

 20